IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICIA McGINNIS,

        Plaintiff,

        vs.                        Case No. 05-2219-JTM

EMPLOYER HEALTH SERVICES, INC.,

        Defendant.

## MEMORANDUM AND ORDER

This matter comes before the court on the defendant's Motion for Summary Judgment (Dkt. No. 33). Defendant contends that plaintiff Patricia McGinnis fails to state a prima facie claim of interference under the Family Medical Leave Act (hereafter "FMLA"), in relation to leave requested for the medical care of her stepdaughter. Plaintiff responds that her case is sufficient to allow it to proceed. After reviewing the parties' arguments, the court finds in favor of defendant.

**I. STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party. Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998). The party moving for summary judgment must

demonstrate its entitlement to summary judgment beyond a reasonable doubt.  Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993).  The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance.  Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in Matsushita).  The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## II. FINDINGS OF FACT

### A. Plaintiff's Blended Family With Michael McGinnis

On February 14, 2003, plaintiff married Michael McGinnis.  Plaintiff has two biological children: Katelyn Diane Croy, who was 9 years old in June 2003, and Alexander Christopher Irvin Croy, who was 8 years old in June 2003.  Plaintiff has a "fifty-fifty" custody arrangement with her children's biological father.

Michael McGinnis has three biological children:  Bree Ann McGinnis, who was 18 years old in June 2003, Shae Lynn McGinnis, who was 13 years old in June 2003, and Mika Jade McGinnis, who was 11 years old in June 2003.  The McGinnis children's biological mother, Tracy Gratz, has full custody of all three children.  The McGinnis children live with their

2

biological mother in Dorr, Michigan. Michael McGinnis does not know what his visitation rights to his children are, nor does he know whether he has any legal right to make medical decisions regarding his children.

## B. Plaintiff's Employment With Defendant Employer Health Services ("EHS")

On July 30, 2001, plaintiff became employed by EHS as an Account Executive.  In early 2003, EHS came under new ownership, and plaintiff received the new owner's employee handbook. The employee handbook provides, in part:

> An employee absent from work for two consecutive days without notifying the department head, immediate supervisor, or human resources department will be considered to have voluntarily resigned.

HCA Shared Services, Employee Handbook, at p. 6 (Depo. Ex. 8).  At the time of the transfer in ownership, plaintiff was a customer service representative, and she reported directly to Linda Bergant, customer service manager.  Plaintiff's second-level supervisor at that time was Nick DeGennaro, who was Linda Bergant's first-level supervisor.  DeGennaro left EHS in April 2003, after which plaintiff's second-level supervisor was Peggy Walker, who was Linda Bergant's first-level supervisor.

## C. Plaintiff's Request For Time Off on April 17, 2003

On April 17, 2003, plaintiff submitted a "Request For Time Off" form to EHS seeking time off on "5/23/03" and time off from "6/11 thru 6/25/03."  Plaintiff did not fully complete the form or designate the purpose of the leave because "[she] knew [she] didn't have enough vacation time to take this amount of time. [She] didn't know how to categorize it."  Plaintiff Depo. 154:17-156:4, 169:21-170:25 (Dkt. 33, Ex. A) (emphasis added); Depo. Ex. 10.

On April 18, 2003, Bergant approved plaintiff for 22.4 hours of time off, approximately

3

three working days, as plaintiff had already used up the remainder of her accrued time off.  On or

about April 21, 2003, plaintiff met with Bergant and Nick DeGennaro regarding plaintiff's April

17, 2003 Request For Time Off.  Bergant explained to plaintiff that she could not approve time

off beyond that which plaintiff had accrued.  On April 22, 2003, plaintiff sent Bergant an email

stating that she had "decided at this time to put [her] <u>vacation</u> on hold."  Depo. Ex. 14 (emphasis

added).  The parties controvert what this statement meant.  Bergant states that she understood

plaintiff's April 22, 2003, email to mean that plaintiff no longer intended to take time off on

"6/11 thru 6/25/03" as plaintiff had requested on April 17, 2003.  However, plaintiff states that

her supervisor was aware that she still needed to accompany her husband, but that the vacation

part of her trip was on hold.

Plaintiff kept blank "Request for Time Off" forms at home, in her briefcase and in her

desk drawer at work so she would have them available when she needed them.  Plaintiff never

submitted a new "Request For Time Off" form to EHS.

**D. Plaintiff's Absenteeism Before and After the April 21, 2003 Meeting**

From May 2002 to April 2003, plaintiff took approximately 30 days off work.  Pursuant

to EHS's policy, plaintiff was entitled to 20 days of paid time off per year.  Plaintiff does not

consider 30 days of time off in less than one year excessive.  In a corrective

counseling/performance improvement plan dated May 30, 2003, plaintiff's manager reported that

plaintiff was absent from work on April 18, April 25, and May 7, 2003.  The form states that

plaintiff received a verbal warning.  On June 2, 2003, plaintiff received "Oral Counseling" for

failing timely to submit her call reports.

"Call reports" are a mechanism for tracking an employee's time. Without completed call

reports, EHS does not have a complete account of an employee's time.  On June 5, 2003, plaintiff received a "Written Warning" for failing timely to complete and submit her call reports.  Bergant prepared a "Plan of Action" supplement to the June 5, 2003 Written Warning.  Plaintiff acknowledged receipt of the "Plan of Action" on June 9, 2003, which states that plaintiff was to work daily from 8 a.m. until 5 p.m. at EHS's Grandview Clinic.  An EHS employee is required to work the hours assigned to him or her.

The parties controvert whether an EHS supervisor may modify policies and practice.  Bergant testified that she may modify or deviate from EHS guidelines, policies, practice or procedures as she considers necessary, with or without notice.  However, plaintiff notes that the employee handbook provides no provision for individual supervisors being able to circumvent the handbook.

**E. Plaintiff's Request For Time Off on June 5, 2003**

On June 5, 2003, plaintiff informed Bergant in writing that she intended to "accompany [her] husband to St. Jude's Hospital in Memphis on Wednesday, Thursday and Friday, June 11-13 [2003] for [her husband's] daughter's cancer treatment."  Depo. Ex. 23 (emphasis added).

**F. Plaintiff's Travel in June**

On the morning of June 9, 2003, plaintiff met with Bergant in Bergant's office.  After the meeting, Bergant instructed plaintiff to sit outside Bergant's office while Bergant took a telephone call from her supervisor Peggy Walker.  The parties dispute whether plaintiff remained outside the office.  Defendant claims that plaintiff left in contravention of Bergant's express instruction and without approval, while plaintiff claims she sat outside Linda Bergant's office for an hour and a half without any contact from Bergant before returning to her work office.

5

Bergant emailed plaintiff at approximately 9:40 a.m. and asked her to report back to Bergant's office by 1:30 p.m. Bergant informed plaintiff that if she failed to report to work by 1:30 p.m. and failed to meet with Bergant the following morning, June 10, 2003, she would be considered to have abandoned her position.

The parties contest whether plaintiff responded to the email. Defendant contends that upon receiving Bergant's email, plaintiff chose not report to Bergant's office at 1:30 p.m. as instructed.  Plaintiff, however, states that she responded to the email and informed Bergant that plaintiff had a client appointment, which conflicted with the proposed meeting time on June 9. Although plaintiff's counsel claims McGinnis met with Bergant on June 10, the record does not support this claim.

Bergant did not receive call reports from plaintiff for either June 9 or June 10, 2003.

Plaintiff left for Memphis on the afternoon of June 11, 2003. The parties dispute why plaintiff took an additional two weeks off.  Defendant asserts that when plaintiff left for Memphis, plaintiff intended to take her full family vacation pursuant to her original April 17, 2003, "Request for Time Off."  Further, McGinnis testified at her deposition that she (plaintiff) "assumed [she] wasn't coming back" to EHS.  McGinnis argues that she did not take two weeks off pursuant to her original request, but took the additional time off because Bergant told her if she (plaintiff) took off June 11-13, plaintiff would not have a job when she returned.

Whether plaintiff notified her supervisor about taking June 11-13 off is another disputed matter.  Defendant argues plaintiff never notified Bergant that she had reconsidered her vacation and planned to be away from the office for the entire period from June 11 through approximately June 25, 2003.  However, plaintiff argues that she and Linda Bergant had a conversation in which

6

plaintiff told Bergant that she (plaintiff) had reconsidered her request for vacation time and would only take off Wednesday, Thursday and Friday of that week.

On June 11, 2003, plaintiff's employment with EHS terminated.

**G. Plaintiff's Leave and Vacation**

On the afternoon of June 11, 2003, plaintiff, Michael McGinnis and plaintiff's eight- and nine-year-old children took a recreational vehicle ("RV") to Memphis, Tennessee.

The parties dispute when plaintiff became aware that she (plaintiff) was terminated. Defendant argues that plaintiff did not receive notification that her employment had terminated until after she had returned from her RV vacation.  Plaintiff argues that although she received written notification of her termination after she returned from Florida, she had received oral notification from Linda Bergant prior to June 11, 2003, that her employment would be terminated if she did not show up for work on June 11, 2003.

The purpose of the Memphis trip was four-fold:  1) meeting the mother of Michael McGinnis' children (Tracy Gratz) in order to "exchange" the McGinnis children for a summer visitation with Michael McGinnis, plaintiff and plaintiff's children; 2) allowing plaintiff to spend time with her two biological children; 3) attending Michael McGinnis' daughter Shae's cancer checkup in Memphis; and 4) continuing on a family RV vacation to Florida.  Shae's biological mother was present at St. Jude on June 12 and 13, 2003.

Plaintiff does not recall whether or not she saw Shae McGinnis on June 11, 2003.  Shae McGinnis had various appointments throughout the morning and afternoon on June 12 and 13, 2003, but did not remain overnight at the hospital on either June 12 or 13, 2003.  Between her appointments, Shae was "hanging out" with her sister Mika, her mother, her father, plaintiff and

plaintiff's children.

Plaintiff believed three adults should be present at Shae's checkup to assist in the care of Shae's siblings, to supervise the other children when neither their mother nor Shae's father could be present, and to assist in exchanging the McGinnis children for the summer.

Plaintiff attended Shae's checkup as a "learning experience" at her husband's request. Michael McGinnis wanted plaintiff to "just be a part of everything that [he is] a part of."  M. McGinnis Depo. 30:21-33:3.  Michael McGinnis also felt it was "essential" for plaintiff to be present "[b]ecause she was [his] wife."  Plaintiff remained with her husband during most of their stay in Memphis.  Shae had several checkups prior to June 2003 at which Michael McGinnis and/or Shae's mother were the only adults present, and Michael and Tracy Gratz had no difficulty managing matters without the presence of a third adult.  On June 13, 2003, following Shae's final checkup appointment, plaintiff, plaintiff's two children, Michael McGinnis, and two of his children, Shae and Mika, left Memphis in the RV for a family vacation, destination Florida.

**H. Shae McGinnis' Health Condition**

In 2000, Shae McGinnis had a cancerous growth removed from her thumb.  Shae's biological mother, Tracy Gratz, stayed with Shae at St. Jude Hospital while Shae received subsequent treatment in 2000.  Tracy Gratz was the only adult living with Shae on a full-time basis during the initial 2000 treatment, though Shae's father, Michael McGinnis, visited periodically.  Shae received treatment after August 2000.

In June 2003, Shae was not experiencing any complications from cancer.  Shae currently shows no signs of cancer, and she clinically has "no existing disease."

**I. Plaintiff's Alleged Need For FMLA Leave**

During plaintiff's April 2003 discussions with Linda Bergant and Nick DeGennaro regarding her request for leave, plaintiff did not mention nor did she believe that any such leave was for an FMLA qualifying event because plaintiff claims she did not know about her FMLA rights in 2003.

On April 17, 2003, plaintiff submitted a notice of intent to Bergant and DeGennaro that at the beginning of her trip she would be "accompany[ing her] husband" while he took his daughter to Memphis for a "cancer checkup."

Since submitting her April 17, 2003 "Request For Time Off," plaintiff fully intended to be away from the office on June 11-13, 2003 – regardless of whether she received approval: "That part was never in question as to whether or not [she] was going to do it." Plaintiff Depo. 178:8-180:22.  Plaintiff, however, did not provide written notice of her intent to EHS until June 5.  Pursuant to the employee handbook:

> An employee desiring to take Family and Medical leave must give at least 30 days advanced notice prior to commencement of leave, if the need for leave is foreseeable. … The request should set forth the reasons for the leave, the anticipated start date and the duration of the leave. … A health care provider's certification will be required to support a request for leave.

HCA Shared Services, Employee Handbook, at p. 31.  Plaintiff characterized the purpose of her inclusion in the trip to Memphis as "to accompany [her] husband," but she believes that she lost her job because she took time off to accompany her husband to his daughter's cancer treatment.

Plaintiff does not believe her employment was terminated because she requested time off for FMLA qualifying leave.  Rather, she believes her employment was terminated because she "took the time to accompany [her] husband is why [she] lost [her] job." Plaintiff Depo. 157:14 (emphasis added).

9

**J. Plaintiff's Employment Subsequent to EHS**

Plaintiff has been employed full-time by Reece & Nichols as a real estate agent since February 2004.  Plaintiff has "unlimited earning potential" as a real estate agent, and plaintiff's long-term plan is to remain in the real estate business.

**III. ANALYSIS**

Defendant raises several arguments in support of summary judgment.  First, defendant challenges whether plaintiff is entitled to FMLA leave, arguing that plaintiff was not needed to "care for" a family member with a serious health condition, that Shae did not satisfy the serious health condition requirement under FMLA, and that plaintiff failed to provide EHS with the required FMLA notice.  Next, defendant claims there was no adverse action that interfered with plaintiff's right to take FMLA leave because plaintiff was not entitled to FMLA leave and because plaintiff was not employed by EHS on June 11-13.  Finally, plaintiff argues that there is a lack of connection between the alleged adverse action and plaintiff's alleged exercise of her FMLA rights.  Plaintiff responds to these arguments by noting that defendant takes too literal an interpretation of FMLA in defining, "care for," "family member," and "serious health condition."

**A Notice under FMLA**

In the Tenth Circuit, "[t]he analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA rights." Bones v. Honeywell Intern., Inc., 366 F.3d 869, 877-78 (10th Cir. 2004).  See Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960-61 (10th Cir. 2002) (notice not part of the analysis set out by the court for determining interference with one's FMLA rights).  "The employee need not expressly assert rights under the FMLA or even mention the

FMLA, but may state only that the leave is needed for a medical reason." 1 Emp. Discrim Coord. Analysis of Federal Law § 32:46 citing 29 CFR 825.302(c). However, a party must provide a supervisor with some indication that the leave is in connection with FMLA. <u>See Bryant v. American Airlines, Inc.</u>, No. 02-5106, 75 Fed.Appx. 699 (Table), 2003 WL 22025514 (10th Cir. 2003) <u>citing</u> <u>Bailey v. Amsted Indus., Inc.</u>, 172 F.3d 1041, 1045 (8th Cir.1999) (" 'An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.' ") (quoting applicable regulation 29 C.F.R. § 825.302(c)) (emphasis added).

As a preliminary matter, the court will evaluate the issue of notice separate from plaintiff's claim of interference. In the first documentation of plaintiff's leave request on April 17, plaintiff requested time off on May 23, 2003, and from June 11-25, 2003. She did not complete the form or specify for what purpose she was requesting the time off. Based on her accrued vacation time, Bergant approved 22.4 hours of paid time off, equivalent to three business days. Bergant did not approve the remaining days. In her email, Bergant referred to the period as plaintiff's "vacation dates." In a response email, plaintiff stated that she was placing her "vacation on hold." There was no mention in these documents as to the nature of the leave or that anything other than vacation time was being requested. The first documented reference to the fact that the leave may qualify was in a correspondence dated June 5, 2003, in which plaintiff specifically stated that her leave for June 11-13 related to her stepdaughter's cancer treatment. The correspondence referred to a conversation on June 2, 2003 about these matters.

Although there is no documented evidence that plaintiff sought FMLA leave until mid-June, plaintiff asserts that her supervisor was aware that part of her trip related to the medical

11

care of plaintiff's stepdaughter.  Assuming this is accurate, then defendant would have had notice of possible FMLA leave in mid-April, three days of which had already been approved based on plaintiff's available paid time off.  However, plaintiff subsequently withdrew her request for leave, and it is not clear that she ever formally requested leave again for time off related to the care of her stepdaughter.  Plaintiff claims that her employer knew she was still taking three days off, even though her vacation was on hold.  The email correspondences do not reflect this distinction.  Her supervisor referred to the entire period beginning June 11 through June 25, 2003, to be plaintiff's "vacation dates."  The only correspondence as to leave was in an email where plaintiff stated that she intended to accompany her husband to Memphis for her stepdaughter's cancer treatment.  Although she referred to her April request, there is no indication that plaintiff had ever renewed her request for leave.  Based on Bergant's prior email, plaintiff could have taken paid time off for the first three days of her "vacation."

Based on these facts, plaintiff has failed to establish that her employer had notice of her FMLA leave.  Her original request did not state what part of her trip related to medical care. The later notice only stated that she was accompanying her husband for her daughter's cancer treatment, which does not necessarily trigger FMLA.  In addition, the statement alone does not clarify whether plaintiff requested leave pursuant FMLA.  Even if the court assumes that her supervisor had notice based on the April request, plaintiff had withdrawn her request for leave until shortly before her departure, which does not comport with EHS request requirements.

**B. FMLA Interference Claim**

Alternatively, if the court assumes plaintiff makes a case for notice, the court proceeds to the issue of FMLA interference.  To state a prima facie FMLA interference claim, plaintiff needs

to show: 1) that she was entitled to leave under the FMLA; 2) an adverse action by EHS

interfered with her right to take FMLA leave; and 3) a correlation between the adverse action and

plaintiff's exercise or attempt to exercise her FMLA rights.  Jones v. Denver Public Schools, 427

F.3d 1315, 1319 (10th Cir. 2005).  Family and Medical Leave Act of 1993, § 105(a)(1), 29

U.S.C.A. § 2615(a)(1).

> Under the interference theory, if an employer interferes with an employee's
> FMLA-created right to a medical leave, it has violated the FMLA regardless of its intent.
> See Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002). In
> such a case, the employee must demonstrate her entitlement to the disputed leave.  Id.
> The intent of the employer is immaterial.  Id.  If dismissal would have occurred regardless
> of the request for an FMLA leave, however, an employee may be dismissed even if
> dismissal prevents her exercise of her right to an FMLA leave.  Id.

Bones v. Honeywell Intern., Inc., 366 F.3d 869, 878 (10th Cir. 2004).  Despite an assertion of an

FMLA interference claim, an employer may terminate an employee for reasons not related to her

FMLA request.  Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

The Smith court noted that "'an employee who requests FMLA leave would have no greater

protection against his or her employment being terminated for reasons not related to his or her

FMLA request than he or she did before submitting the request.'"  Id. citing Gunnell v. Utah

Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998).

In evaluating the first prong of a claim of FMLA interference, plaintiff must demonstrate

that she is an eligible employee entitled to leave because she is "needed" to "care for" a family

member with a "serious health condition." 29 U.S.C. § 2612(a)(1)(C).  Medley v. Polk Company,

260 F.3d 1202, 1203 (10th Cir. 2001).  Under FMLA §101(12), a stepchild falls within the scope

of family members.

The Department of Labor provides that "to care for" requirement may be satisfied by the

provision of either physical or psychological care. The regulation states:

> (a) The medical certification provision that an employee is "needed to care for" a family member encompasses both physical <u>and</u> psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
> (b) The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116.  <u>Fioto v. Manhattan Woods Golf Enterprises, LLC</u>, 270 F. Supp. 2d 401,

403-404. (S.D.N.Y. 2003) (reversing a jury award where plaintiff had not psychologically cared

for his mother prior to or after her brain surgery). The facts raise the issue of whether plaintiff

was needed to care for Shae.  Based on plaintiff's own admission, she was providing care for

Shae. Although it was Shae's biological parents who attended her medical treatment, plaintiff

stayed with her husband during Shae's treatment to be a part of the family.  Additionally, the

facts indicate that plaintiff was present to fill in for Shae's biological parents, which is a

permitted purpose under the regulations. Defendant critiques the extent and value of plaintiff's

care.  However, this court finds that plaintiff's presence at the hospital during the treatment of

her stepdaughter does provide a basis for finding that plaintiff provided psychological "care" as

defined in the DOL regulation. As a stepchild, Shae may be considered plaintiff's family

member.  FMLA §101(12).  Shae's ongoing cancer care constitutes a serious medical condition

as it is a condition that requires continuing treatment by a health care provider.  FMLA §

101(11).  Multiple treatment and the period of recovery, such as treatment of cancer, falls within

the scope of FMLA, and an absence related to subsequent treatment is contemplated as part of a

14

serious health condition for which leave may be requested. FMLA Regulation § 825.800. Thus, with proper notice, plaintiff's leave is of the type that would qualify under FMLA.

The next issue is whether an adverse action by EHS interfered with plaintiff's right to take FMLA leave. Defendant's theory was that plaintiff was not employed with EHS on June 11, and therefore EHS could not have interfered with plaintiff's FMLA rights. The facts indicate the plaintiff was to meet with her supervisor on June 9 and June 10. Plaintiff allegedly emailed her supervisor and said she could not make the meeting on June 9 at 1:30 p.m because of a client meeting. In plaintiff's response, plaintiff's counsel states that plaintiff met her supervisor on June 10, but the record contradicts this statement. Based on her supervisor's instructions, plaintiff abandoned her position on June 10 when she failed to meet with her supervisor. This meeting was before plaintiff's leave. Under these circumstances, plaintiff's failure to follow instructions led to her termination rather than her claim for leave. The notice of termination or abandonment was sent out the following day, June 11. Thus, plaintiff was not an employee of EHS before she took leave.

Even if the court assumes plaintiff could show an adverse action, plaintiff fails to establish the final prong of a prima facie case, a correlation between the alleged adverse action and plaintiff's exercise of FMLA rights. Defendant argues that plaintiff would have been dismissed regardless of her FMLA rights, noting plaintiff's three absences prior to May 30, 2003, and plaintiff's ongoing issue with her call reports. Additionally, as the court has already noted, plaintiff failed to show for meetings with her supervisor, causing her supervisor to claim plaintiff abandoned her job. These facts lead the court to conclude that plaintiff's absences resulted in her termination or abandonment. The courts have recognized that an FMLA interference claim fails

15

where a plaintiff is terminated for reasons not related to her FMLA request.  <u>Smith</u>, 298 F.3d at

960.  <u>Bones</u>, 366 F.3d at 877 (noting that an employer may resist an FMLA interference claim by

demonstrating that an employee would be dismissed regardless of her request for an FMLA

leave).  Accordingly, plaintiff has not stated a prima facie claim of FMLA interference.

IT IS ACCORDINGLY ORDERED this 31st day of May 2006, that the court grants

defendant's Motion for Summary Judgment (Dkt. No. 33).


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE